IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| STEVEN M. JACOB and <br> DAN MEIS, <br><br> Plaintiffs, <br><br> vs. <br><br> HAROLD W. CLARKE and <br> NEBRASKA DEPARTMENT OF <br> CORRECTIONAL SERVICES, <br><br> Defendants. | 4:04cv3240 <br><br> MEMORANDUM AND ORDER |

This matter is before the court on the following pending motions: (1) filing no. 24, the Motion to Dismiss filed by the defendants, Harold W. Clarke and the Nebraska Department of Correctional Services ("DCS"); (2) filing no. 26, the Objections to Motion to Dismiss filed by the plaintiffs, Steven M. Jacob and Dan Meis; (3) filing no. 27, the plaintiffs' Request to Enter Default against Harold W. Clarke in his individual capacity; and (4) filing no. 29, the plaintiffs' Request for Leave to File an Amended Complaint. Each plaintiff is a prisoner in the custody of DCS, serving a life sentence imposed under Nebraska law for the Class IA felony of first degree murder.

The plaintiffs allege that DCS erroneously interprets Nebraska law, thereby wrongfully denying parole eligibility to prisoners serving sentences of life imprisonment for first degree murder. According to the plaintiffs, the defendants' error lies in construing a life sentence for first degree murder to include a *minimum* term of life imprisonment as well as a maximum term of life. In Nebraska, parole eligibility is based on the minimum term of an indeterminate sentence. According to the plaintiffs, by reading a minimum term of

1

life imprisonment into the first degree murder statute, and thereby obviating eligibility for parole, the defendants have adopted a construction of state law which conflicts with the Nebraska Constitution, state law and historical practice.

## Sovereign Immunity

The plaintiffs seek only injunctive relief. They ask this court to enjoin DCS and Harold W. Clarke, in Clarke's individual and official capacities, from violating Nebraska law. As a preliminary matter, all claims for injunctive relief against Clarke, the former Director of DCS, have become moot, as Clarke has resigned his position as Director and left Nebraska. However, even if his successor, Robert Houston, were to be substituted for Clarke, this court would have no power to grant the requested relief. The Eleventh Amendment to the United States Constitution precludes this court from enjoining the alleged prospective violations of *state* law.

DCS is an agency of the State of Nebraska. State sovereign immunity, recognized and preserved by the Eleventh Amendment, prohibits a plaintiff from suing the State of Nebraska or its agencies, except insofar as the state or the Congress of the United States has abrogated the state's sovereign immunity. Thus, DCS shares the State of Nebraska's sovereign immunity under the Eleventh Amendment. See, e.g., Nebraska Methodist Health System, Inc. v. Department of Health, 543 N.W.2d 466, 469 (Neb. 1996): "Generally speaking, a suit against a state agency is a suit against the State itself." Accord County of Lancaster v. State, Dept. of Public Institutions, 529 N.W.2d 791, 794 (Neb. 1995): "For the purposes of applying the doctrine of sovereign immunity, a suit against an agency of the state is the same as a suit against the state."

Furthermore, "[a] State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99 (1984) (emphasis in original). See also Hess v. Port Authority Trans-Hudson Corp., 513 U.S. 30, 39-40 (1994): "The Eleventh Amendment largely shields States from suit in federal court without their consent, leaving parties with claims against a State to present them, if the State permits, in the State's own tribunals." Accord Trevelen v. University of Minnesota, 73 F.3d 816, 818 (8th Cir. 1996): "The Supreme Court has interpreted the Eleventh Amendment to bar actions in federal court against a state by its citizens."

However, while states and state agencies retain their sovereign immunity, state employees, in their official capacity, may be sued under the federal civil rights laws in limited circumstances. Under the doctrine of Ex Parte Young, 209 U.S. 123, 155-56 (1908), a private party may seek prospective injunctive relief in federal court against state officials in their official capacity, even if the state is otherwise protected by the Eleventh Amendment. See, e.g, Klingler v. Director, Dept. of Revenue, 281 F.3d 776, 777 (8th Cir. 2002). The doctrine of Ex parte Young, which ensures that state officials do not use the Eleventh Amendment to avoid compliance with federal law, carves out an exception to Eleventh Amendment immunity. However, the exception is narrow and applies only to prospective relief. The exception does not permit judgments against state officers in their official capacity declaring that they violated federal law in the past. See, e.g., Green v. Mansour, 474 U.S. 64, 68, 73 (1985).

The plaintiffs characterize their claims as arising under the Eighth and Fourteenth Amendments to the United States Constitution. The problem for this court, however, is that

the plaintiffs' claims derive entirely from, and exclusively turn on, their interpretation of state law. There is no federal constitutional question inherent in an alleged violation of state law by a state official. "[A] violation of state law, without more, does not state a claim under the federal Constitution or 42 U.S.C. § 1983." Bagley v. Rogerson, 5 F.3d 325, 328 (8th Cir. 1993). Accord Collins v. Bellinghausen, 153 F.3d 591, 596 (8th Cir. 1996); Marler v. Missouri State Bd. of Optometry, 102 F.3d 1453, 1457 (8th Cir. 1996).

More important, the Eleventh Amendment deprives federal courts of jurisdiction over claims to enjoin a state official from prospective violation of state law or to require a state official to conform to state law. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 104-06 (1984). In such a case, the "need to promote the supremacy of federal law" underlying the Ex Parte Young exception is absent. Id. at 106.

> A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.

Id.

In their Request for Leave to File an Amended Complaint, the plaintiffs explain that they have attempted unsuccessfully to submit an amicus curiae brief in a case, i.e., State v. Conover, presently pending before the Nebraska Supreme Court concerning whether a life sentence for first degree murder in Nebraska means "life without parole." Because the Nebraska Supreme Court rejected their amicus curiae brief, the plaintiffs wish to add to the above-entitled case the arguments they would have submitted in State v. Conover regarding the original intent of the Nebraska Constitution and historical facts concerning

4

Nebraska sentencing. However, the plaintiffs may not maintain a parallel proceeding in a federal court to obtain a declaration concerning the meaning of state law contrary to that espoused by the Nebraska appellate courts. Only a state court can grant the plaintiffs the relief they seek. For all of the foregoing reasons, the plaintiffs' complaint must be dismissed,

THEREFORE, IT IS ORDERED:

1. That filing no. 24, the defendants' Motion to Dismiss, is granted insofar as filing no. 24 is consistent with this Memorandum and Order;

2. That filing no. 26, the plaintiffs' Objections to Motion to Dismiss, is denied;

3. That filing no. 27, the plaintiffs' Request to Enter Default against Harold W. Clarke in his individual capacity, is denied;

4. That filing no. 29, the plaintiffs' Request for Leave to File an Amended Complaint, is denied;

5. That the plaintiffs' complaint and this action are dismissed; and

6. That a separate judgment will be entered accordingly.

DATED this 11th day of July, 2005.

BY THE COURT:

s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
Chief District Judge