IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| STEVEN M. JACOB and<br>DAN MEIS,<br><br>      Plaintiffs,<br><br>vs.<br><br>ROBERT HOUSTON,[1] et al.,<br><br>      Defendants. | 4:04cv3240<br><br>MEMORANDUM AND ORDER |

    This matter is before the court on filing no. 33, the Motion to Alter or Amend Judgment filed by the plaintiffs, Steven M. Jacob and Dan Meis, prisoners serving life sentences in the custody of the Nebraska Department of Correctional Services ("DCS"). The plaintiffs filed this action asking the court to enjoin the Director of DCS from violating Nebraska law and the plaintiffs' federal constitutional rights.

    The plaintiffs assert that DCS officials wrongfully deny parole eligibility to prisoners serving sentences of life imprisonment for the Class IA felony of first degree murder. DCS construes a sentence of "life imprisonment" for that offense as "life imprisonment without parole," which, according to the plaintiffs, violates the Nebraska Constitution and historical practice. I entered judgment in this case (filing nos. 31 and 32), finding no federal constitutional issue which would permit this court to reach the merits of the plaintiffs' claims.[2]

    After the plaintiffs moved to alter or amend judgment in this case, both parties suggested that I await the decision in a case, State v. Conover, then pending before the Nebraska Supreme Court. The Nebraska Supreme Court has since rendered a decision

---

[1] I have sua sponte substituted Robert Houston, the present Director of DCS, as the defendant in this action in lieu of Harold W. Clarke, who has left DCS.

[2] I stated (filing no. 31 at 4): "There is no federal constitutional question inherent in an alleged violation of state law by a state official. '[A] violation of state law, without more, does not state a claim under the federal Constitution or 42 U.S.C. § 1983.' Bagley v. Rogerson, 5 F.3d 325, 328 (8th Cir. 1993). Accord Collins v. Bellinghausen, 153 F.3d 591, 596 (8th Cir. 1996); Marler v. Missouri State Bd. of Optometry, 102 F.3d 1453, 1457 (8th Cir. 1996). More important, the Eleventh Amendment deprives federal courts of jurisdiction over claims to enjoin a state official from prospective violation of state law or to require a state official to conform to state law. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 104-06 (1984)."

in that matter which is published as State v. Conover, 703 N.W.2d 898 (Neb. 2005). I now turn to the plaintiffs' Motion to Alter or Amend Judgment.

The plaintiffs contend that the Director of DCS violates their right to due process and violates ex post facto[3] prohibitions by rejecting the plaintiffs' claims of parole eligibility and by refusing to forward their names to the Nebraska Board of Parole to be considered for parole suitability. This court can enjoin DCS officials from violating the United States Constitution and even from violating state law when a right or protection under the United States Constitution (e.g., fair trial, due process, ex post facto or double jeopardy) is implicated, but absent a federal question, interpretation of the state penal code must be left to the state courts.

## Life "Without Parole"

In State v. Conover, 703 N.W.2d 898 (Neb. 2005), and in a case cited therein, State v. Gales, 658 N.W.2d 604 (Neb. 2003), the Nebraska Supreme Court has made it clear that "life imprisonment" and "life imprisonment without parole" are not the same sentence in Nebraska. In State v. Conover, the Court declined to adopt the State's view that historically and prior to a 2002 amendment of Neb. Rev. Stat. § 28-105(1), a sentence for first degree murder of "life imprisonment **necessarily** meant life imprisonment without parole." Id., 703 N.W.2d at 904 (emphasis added). In State v. Gales, 658 N.W.2d at 629-30, the Court held that ex post facto principles precluded subjecting a defendant to the more onerous minimum penalty of "life imprisonment without parole" when the minimum penalty at the time of his offense was "life imprisonment."

Thus, there is a distinction of some kind between "life imprisonment" and "life imprisonment without parole," although the nature and parameters of the distinction remain to be defined by the Nebraska Supreme Court. The consequence of the decisions by the Nebraska Supreme Court in State v. Conover and State v. Gales is that the Director of DCS may not read into the plaintiffs' sentences of life imprisonment the additional

---

[3]See U.S. Const., art. 1, § 10, cl. 1 ("No State shall ... pass any ... ex post facto Law"). The Ex Post Facto Clause prohibits certain kinds of retroactivity. Ex post facto prohibitions apply not only to legislation but to an agency's exercise of delegated authority to make and enforce rules. See, e.g., Smith v. Scott, 223 F.3d 1191, 1193-94 (10th Cir. 2000): "Although the Constitution only prohibits the states from passing an ex post facto 'Law,' ... an agency regulation which is legislative in nature is encompassed by this prohibition because a legislative body 'cannot escape the Constitutional constraints on its power by delegating its lawmaking function to an agency.'" (Citations omitted.) Thus, a law (or in the plaintiffs' case, agency practice or regulation) need not increase the punishment attached to a crime to be disadvantageous, but can simply lengthen the time that a prisoner must spend in prison or reduce an opportunity to shorten the time in prison. See Weaver v. Graham, 450 U.S. 24, 33-34 (1981).

language "without parole," which was not in the penal code when the plaintiffs were sentenced.[4] However, that result does **not** lead to the conclusion that the plaintiffs have present parole eligibility.

### Parole Eligibility

Parole eligibility in Nebraska is a function of the minimum prison term of an indeterminate sentence and is tied to the number of years of the minimum term. Neb. Rev. Stat. § 83-1,110. A sentence of life imprisonment for the Class IA felony of first degree murder either is a determinate ("flat") sentence of life, with no minimum term, or is an indeterminate sentence with a minimum term of life and a maximum term of life. In either event, absent a minimum term of years, parole eligibility cannot be calculated until and unless the sentence is commuted. See, e.g., Ditter v. Nebraska Board of Parole, 655 N.W.2d 43, 46 (Neb. App.2002): "For an offender serving a life sentence, it would be necessary to first have the sentence commuted before the offender would be eligible for parole. Only the Governor, Attorney General, and Secretary of State, sitting as a board, have power to grant commutations under Neb. Const. art. IV, § 13, after which time the Board has the power to determine the time of release on parole of committed offenders eligible for such release, see § 83-192(1)(f)(v)."

The State has always recognized that the executive power of commutation qualifies a sentence of life imprisonment. See, e.g., Att'y Gen. Op. No. 23, 1977 WL 25282 at *1 (Feb. 22, 1977): "A person receiving a life sentence for first degree murder is not eligible for parole until such time as the Board of Pardons, in exercising its constitutional authority, commutes his life sentence to either a determinate number of years or an indeterminate sentence, the minimum of which may be used to calculate his parole eligibility."

### Neb. Const. art. IV, § 13

Article IV, § 13 of the Nebraska Constitution establishes a Board of Parole and states in part: "Said board, or a majority thereof, shall have power to grant paroles after conviction and judgment, **under such conditions as may be prescribed by law**, for **any offenses committed against the criminal laws of this state except treason and cases of impeachment** ...." (Emphasis added.)

Neb. Const. art. IV, § 13 also creates a Board of Pardons, stating in pertinent part: "The Governor, Attorney General and Secretary of State, sitting as a board, shall have

---

[4]See also State v. Mata, 668 N.W.2d 448, 479-80 (Neb. 2003): " We determined [in State v. Gales] that the provision of L.B. 1 which amended the penalty for a Class 1A felony from 'Life imprisonment' to 'Life imprisonment without parole' was a substantive change that could not be applied to the defendant upon resentencing. Gales, 265 Neb. at 633, 658 N.W.2d at 629. Our holding in Gales is controlling in the instant case." (Internal quotation marks omitted.)

3

power to remit fines and forfeitures and to grant respites, reprieves, pardons, or commutations in all cases of conviction for offenses against the laws of the state, except treason and cases of impeachment. The Board of Parole may advise the Governor, Attorney General and Secretary of State on the merits of any application for remission, respite, reprieve, pardon or commutation but such advice shall not be binding on them."

According to the plaintiffs, the defendants' interpretation of their life sentences to preclude the possibility of parole violates Neb. Const. art. IV, § 13 as follows: Art. IV, § 13 provides that persons convicted of treason and cases of impeachment are not eligible for parole, and, thus, all other sentences must include parole eligibility "under such conditions as may be prescribed by law." That view has had some early support from the State in at least one Attorney General Opinion.

In Att'y Gen. Op. No. 189 (Mar. 3, 1976), the Nebraska Attorney General noted in 1976 that a penalty provision "providing for imposition of life imprisonment without possibility of parole after conviction of certain crimes none of which involve treason or impeachment" "would be difficult to defend constitutionally" under Article IV, § 13 of the Nebraska Constitution. (See filing no. 30-2 at page 53 of 73, plaintiffs' exhibits, Attorney General Opinions.)

The Attorney General further explained the next year in Att'y Gen. Op. No. 64, 1977 WL 25320 at *2 (Apr. 8, 1977): "In Opinion of the Attorney General No. 189, 1976, it was reasoned that since Article IV, section 13 of the Constitution of Nebraska provided that the Parole Board 'shall have power to grant paroles after conviction and judgment, under such conditions as may be prescribed by law, for any offenses committed against the criminal laws of this state except treason and cases of impeachment...' that the exception of treason and cases of impeachment from parole eligibility implied the exclusion of all other categories of crimes not fairly incident to those enumerated. **That is to say, that since the Constitution provided that persons convicted of treason and cases of impeachment were not eligible for parole, that all other cases involving criminal convictions must be eligible for parole**." (Emphasis added.)

Thus, Neb. Const. art. IV, § 13 is violated by a sentence of life "without parole" or "without possibility of parole" for first degree murder. However, as long as the Board of Pardons retains the power to commute a sentence of life imprisonment to a term of years or an indeterminate sentence (i.e., with a minimum term), the person serving that life sentence remains potentially eligible for parole, and no violation of Neb. Const. art. IV, § 13 is apparent. Accordingly, as the plaintiffs must first obtain a commutation, their sentences of life imprisonment are not accurately characterized as "life imprisonment without parole" but are instead "life imprisonment *without parole unless and until commuted to a term of years or an indeterminate sentence*."

The plaintiffs ask what is to prevent the legislature from simply enacting "life imprisonment without parole" as the sentence for the offense of first degree murder, and,

in so doing, possibly attempt to preclude commutation of such a sentence. However, this court cannot certify that question to the Nebraska Supreme Court because that statutory sentence does not apply and cannot apply in the future to the plaintiffs in this case. See State v. Conover, State v. Gales (there can be no retroactive addition of "without parole" to existing sentences of "life imprisonment").

Neb. Const. art. IV, § 13 is not a constitutional grant of parole eligibility to prisoners but instead allocates among the branches of state government the powers to grant clemency and parole. At this time, the law of Nebraska requires an inmate with a sentence of life imprisonment for the Class IA felony of first degree murder to obtain a commutation of the life sentence from the Board of Pardons, before the Board of Parole may exercise its power to consider that prisoner for parole. As there is no binding legal precedent in Nebraska holding that the Nebraska Constitution is thereby violated, I do not see a due process, ex post facto or other federal constitutional issue in this case.

I have appreciated the well-reasoned and thoroughly researched arguments presented by the plaintiffs. However, those arguments concern the interpretation that *should* be given to the Nebraska Constitution and state penal statutes by the state's highest court. Such matters must be directed to the state courts.[5] Accordingly, filing no. 33, the plaintiffs' Motion to Alter or Amend Judgment, must be denied.[6]

SO ORDERED.

DATED this 15th day of February, 2006.

BY THE COURT:

s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
Chief District Judge

---

[5]For example, I consider the plaintiffs' analysis of Neb. Const. art. II, § 1 purely a matter of state law, without federal constitutional implications.

[6]Either or both plaintiff(s) may now file a Notice of Appeal within 30 days to the Eighth Circuit Court of Appeals. The filing fee for each is presently $255, although a large increase is anticipated within several months. Under the Prison Litigation Reform Act, even if proceeding in forma pauperis, a prisoner appellant will be liable for the entire appellate filing fee, which the appellant's institution will collect in installments from the appellant's inmate trust account.